UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT B. WILLIAMS,                          Case No. 18-11060

     Plaintiff                            Michael F. Leitman
v.                                           United States District Judge

THOMAS O. WINN AND TIA                       Stephanie Dawkins Davis
CLARK,                                       United States Magistrate Judge

     Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (Dkt. 14)**

## I.   PROCEDURAL HISTORY

Plaintiff, Robert B. Williams, a prisoner in the custody of the Michigan

Department of Corrections (MDOC) filed this complaint on April 2, 2018 against

two MDOC employees, alleging violations of his civil rights.  (Dkt. 1).  On August

15, 2018, defendants Thomas O. Winn (the Warden of the Saginaw Correctional

Facility) and Tia Clark (the Special Activities Direction at the Saginaw

Correctional Facility) filed their motion for summary judgment.  (Dkt. 14).  The

motion is fully briefed by the parties.  (Dkt. 15-17).  This matter is now ready for

report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendants' motion for summary judgment as to plaintiff's failure to exhaust

administrative remedies be **DENIED**, defendants' motion to dismiss plaintiff's

Equal Protection claim be **DENIED**, and that defendants' motion to dismiss

plaintiff's Due Process and First Amendment retaliation claims be **GRANTED**.

## II.   PLAINTIFF'S COMPLAINT

In June 2017, Williams filed an application to participate in the Paws for a

Cause program.  (Dkt. 1, ¶ 1).  According to the complaint, Clark permanently

denied Williams the opportunity to participate in the program, concluding that he

did not  meet the criteria for the program because he was serving a sentence for

domestic violence.  (Dkt. 1, ¶ 2).  Williams says that, according to program

criteria, prisoners serving sentences for criminal sexual conduct, animal cruelty,

torture, domestic violence, stalking, or kidnaping are not permitted to participate.

(Dkt. 1, ¶ 3).

On September 8, 2017, Williams lodged a formal complaint or request for

corrective action with Winn against Clark for the denial, alleging discrimination.

(Dkt. 1, ¶ 4).  On September 19, 2017, Winn gave Williams a written response,

which provided that "you do not have a right to participate in any of the dog

programs. It is a privilege. You are not owed an explanation as to why you are not

a dog handler and do not expect one.  Thank you for your interest."  (Dkt. 1, ¶ 7).

Williams alleges that Winn's response is "tantamount to directly participating in

permanently denying plaintiff the ability of having 900 dog program applied to

him, in the same fashion as it is to those who are similarly situation." (Dkt. 1, ¶ 8).
Williams alleges that Clark participated in the decision to deny his application and
Winn was the ultimate decision-maker, who approved the denial. (Dkt. 1, ¶¶ 9-10).

Williams alleges that defendants apply a different standard to Caucasian
applicants versus African-American applicants. (Dkt. 1, ¶ 11). He alleges that of
the 23 participants in the program, 16 are Caucasian, two are Hispanic, four are
African-American, and one is Indian. (Dkt. 1, ¶ 12). Williams also alleges that
Donald Hall, a Caucasian prisoner, was approved for the dog program, despite
having prior gang activity, which should have precluded him, based on the
program criteria. (Dkt. 1, ¶ 13). Williams alleges that prisoner Peterson, who is
also Caucasian, was approved for the program despite being convicted of
murdering his girlfriend. (Dkt. 1, ¶ 14). Williams also identifies two other
Caucasian prisoners, LeFleur and Adamowicz, who were approved to participate in
the dog program, despite not meeting the program criteria. (Dkt. 1, ¶¶ 15-16).
According to the Complaint, defendants have a practice of applying the dog
program criteria differently (with favor) to Caucasians. (Dkt. 1, ¶ 17).

On October 18, 2017, Williams wrote to MDOC director, Heidi Washington,
requesting an investigation into the conduct of defendant Winn for retaliating
against him. (Dkt. 1, ¶ 19). Williams says he was engaged in protected conduct,

by exposing the racial injustice and inequality in the dog program.  (Dkt. 1, ¶ 20).

Williams maintains that he used the prisoner grievance process to try to resolve the

problem.  He submitted SRF-2017-09-1011-28B in September 2017, which was

rejected as vague.  He appealed the rejections through Step III, and it was upheld at

all steps.  (Dkt. 1, ¶ 22).  Williams filed additional grievances to resolve the

problem and all were rejected as vague or duplicative.  (Dkt. 1, ¶¶ 23-25).

On November 30, 2017, Williams was directed to report to his unit's officer

station to see Clark.  (Dkt. 1, ¶ 26).  Clark told Williams that as a result of his

complaint and grievances, the dog program criteria was being changed.  Williams

reports that he told Clark that using the new criteria against him was an adverse

action and a retaliatory act.  Williams maintained that the old criteria should be

applied to his application.  (Dkt. 1, ¶ 27).  The new criteria now precluded

prisoners from participating in the dog program who have a history of criminal

sexual conduct, animal cruelty, dog fighting, torture, domestic violence,

stalking/harassing, child abuse, kidnapping, and murder/homicide involving an ex

or current partner, spouse, family member or in-law.  (Dkt. 1, ¶ 28).  Williams

contends that the original criteria should apply to him, because that is what was in

effect when he applied, and he exhausted his administrative remedies based on the

fact that he is serving a sentence for second degree murder.  (Dkt. 1, ¶ 30).  A copy

of his judgment of sentence was attached to his grievance, which supports his

4

allegation that, but for his complaint, Winn would not have permanently denied him an opportunity to participate in the program.   (Dkt. 1, ¶ 31).  Clark told Williams that the decision to permanently deny him the ability to participate in the dog program was because he killed his girlfriend.  Williams maintains that this untrue and the Basic Information Report characterizes their relationship as "acquaintance."  (Dkt. 1, ¶ 32).

Williams sought assistance from his friends and family to obtain evidence to support his claims at Step III of the grievance process.  He used the prison electronic mail system (JPay).  When he received a response from the "MOTORCITY" account in his inbox, the mail was censored.  Williams maintains that the blocking of this account was an adverse action to deter him from seeking redress.  (Dkt. 1, ¶ 34).  Williams attempted to grieve this issue, but the grievance was deemed duplicative, indicating that "You have written (4) other grievances in regards so the SRF dog handler program.  This issue is deemed duplicative and rejected at Step I.  The other issue in this grievance about J-Pay e-email not being processed in accordance with policy (PD 05.03.118) may be submitted in a separate grievance.  This grievance is duplication and rejected at Step I."  (Dkt. 1, ¶ 35).  The rejection was upheld through Step III.  *Id*.

Williams alleges that the defendants' conduct was willful and malicious and resulted in preventing him from (a) participating in the rehabilitative program

offered by Paws for a Cause; (b) obtaining marketable skills that can be utilized for job placement on release; and (c) earning $71 per month pay.  Williams also points out that as a juvenile lifer with 30 years of incarceration, he will be subject to a parole board review process that will consider rehabilitative efforts.  (Dkt. 1, ¶ 36). Williams alleges that defendants' actions constitute (1) discrimination under the Fourteenth Amendment; (2) a due process violation under the Fourteenth Amendment; and (3) retaliation under the First Amendment.  (Dkt. 1, ¶¶ 38, 40, 42).

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standards of Review

#### 1.   Motion to dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).  In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519

(1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the *pro se* complaint at issue.).

### 2.    Summary Judgment [1]

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

---

[1] While some judges in this District have treated motions for summary judgment on the issue of failure to exhaust administrative remedies as unenumerated motions to dismiss under Rule 12(b)(6), *see e.g.*, *Neal v. Raddatz*, 2012 WL 488827 (E.D. Mich. Jan. 12, 2012), report and recommendation adopted in pertinent part, 2012 WL 488702 (E.D. Mich. Feb. 15, 2012), it has been more recently concluded in a published opinion that such a practice is not appropriate and legally unsupported. *See Anderson v. Jutzy*, 175 F.Supp.3d 781, 788 (E.D. Mich. 2016).

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

      B.    <u>Exhaustion of Administrative Remedies</u>

      1.    Legal Standard

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  *Porter v. Nussle,* 534 U.S. 516, 520 (2002).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.  In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216.  "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'"  *Jones,* 549 U.S. at 218.  "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."  *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001).  "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense.  *Jones*, 549 U.S. at 218.  Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise.  *Kramer v. Wilkinson*, 226 Fed.

Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Here, defendants bear the burden of proof on their affirmative defense of failure to exhaust administrative remedies.

"As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*, 2010 WL 1286256, *1 (W.D. Mich. 2010).

2.      MDOC Grievance Procedure

Defendants provide the administrative grievance process applicable to plaintiff's claims.  Pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that a prisoner must follow before seeking judicial intervention, each with specific time limits.  (Dkt. 14-2, Ex. 1, MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007)).  First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue.  *Id*. ¶ P.  If the issue is not resolved, the prisoner may then file a Step I grievance, which must be accomplished within five business days of the attempted verbal resolution.  *Id*. ¶¶ P, V.  If the prisoner is not satisfied with the Step I outcome, or he does not receive a timely response, he must file a Step II appeal within 10 business days of response, or if, no response was received, within 10 business days of when the response was due.  *Id*. ¶ BB.  If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days of receiving the response, or if no response is provided, within 10 business days of when it was due.  The Step III response ends the administrative process.  *Id*.  ¶ FF.

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved and must also include the "[d]ates,

13

times, places, and names of all those involved in the issue being grieved." *Id.* ¶ R. A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant. *Id.* ¶ G. A grievance may also be rejected if the grievance is untimely but may not be rejected if there is a valid reason for the delay. *Id.* ¶ G.4.

Grievances and grievance appeals at all steps are considered filed on the date sent by the grievant. The total grievance process from the point of filing a Step I grievance to providing a Step III response must generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II. According to the policy, an extension for a Step I or II response may not exceed 15 business days unless the grievance falls within the jurisdiction of the Internal Affairs Division. The Grievance Coordinator is required to immediately notify the grievant in writing whenever an extension has been approved; the extension must also be noted in the grievance response. *Id.* ¶ S.

3.     Discussion

Defendants maintain that Williams failed to exhaust any of his claims through Step III of the MDOC grievance procedure. (Dkt. 14-3, Ex. 2). More specifically, defendants argue that the Step III grievance report shows that all of his grievances were rejected for procedural reasons, because they were deemed

14

vague or duplicative. *Id*. Defendants acknowledge that these grievances allege discrimination, a due process violation, and retaliation but assert that they failed to establish the elements of his claims. (Dkt. 14, p. 14). Accordingly, defendants maintain that they were properly rejected as vague or duplicative.

In Williams' first grievance (SRF 2017-09-1011-28B) relating to the issues presented in this lawsuit, dated September 11, 2017, he wrote that P.C. Rievert informed him that Clark had permanently denied his application for participating in the dog handling program. He also wrote that when he asked why, he was told to ask Clark, which he did via letter dated September 8, 2017. Williams also wrote in his grievance that the criteria for the dog program should be applied equally to everyone and that none of the enumerated criteria for denial applied to him. (Dkt. 14-3, Pg ID 178; Dkt. 1, Pg ID 40).[2] In the Step I response, Williams' grievance was rejected as "vague" because "you alleged that staff made an administrative decision based on prohibited discrimination but fail to state what form of discrimination or a decision based on prejudice was used." (Dkt. 14-3, Pg ID 178). The Step I response further stated that Williams had no right based in policy or procedure to be chosen to participate in the various dog handler programs. *Id*. The rejection was upheld at Steps II and III. (Dkt. 14-3, Pg ID 175, 182). Although

---

[2] The various grievances and responses are attached to the complaint, but the undersigned will generally refer to those attached to defendants' motion because they are more legible.

Williams mentioned race discrimination in his Step II and Step III appeals, that issue was not addressed on the merits during the process.  *Id*.

On October 13, 2017, Williams submitted another grievance (SRF 2017-10-1184-28B) in which he directly accused Winn of permanently denying him an opportunity to participate in the dog program because he is African-American, based on a decision from Winn of that same date.  (Dkt. 14-3, Pg ID 184). Williams further explained his position that Winn, as the Warden, should have directed Clark to not discriminate against him on the basis of race.  Williams acknowledged that participation in the program is a privilege but asserted that a Caucasian inmate with known gang history was allowed to participate in the program, which constitutes race discrimination.  He further alleged that Winn knew or should have known that he was being racially discriminated against.  *Id*. This grievance was rejected at Step I because Williams did not provide any corroborating information to explain his claim of discrimination and the grievance was deemed too vague.  *Id*.  Williams was also warned that if he continued to abuse the grievance process, it would be pursued administratively.  *Id*.  The rejection of this grievance was upheld at Steps II and III.  (Dkt. 14-3, Pg ID 182-183).

On October 20, 2017, Williams also submitted grievance SRF 2017-10-1185-28B in which he asserted that Winn's final decision to disallow him from

participating in the dog program violated his due process rights.  (Dkt. 14-3, Pg ID 165).  This grievance was rejected at Step I because Williams did not provide any corroborating information to explain his claim of discrimination and the grievance was deemed too vague.  *Id*.  Williams was also warned that if he continued to abuse the grievance process, it would be pursued administratively.  *Id*.  The rejection of this grievance was upheld at Steps II and III.  (Dkt. 14-3, Pg ID 163-164).

The rejection of the grievances is not, however, the end of the analysis.  It is appropriate for the Court to review the prison official's administration of the state grievance procedure.  According to *Reeves v. Salisbury*, 2012 WL 3206399, at \*5 (E.D. Mich. Jan. 30, 2012) report and recommendation adopted in pertinent part, rejected on other grounds, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012), the Court is not "required to blindly accept the state's application of the procedural rule."  As explained in *Nelson v. Walsh*, 2017 WL 1212836, at \*4 (E.D. Mich. Feb. 17, 2017), report and recommendation adopted, 2017 WL 1100945 (E.D. Mich. Mar. 24, 2017), when completing a grievance, prisoners are required to concisely state the issues they are alleging and include the "[d]ates, times, places, and names of all those involved in the issue being grieved."  *Id*. (quoting 03.02.130 at ¶ R).  "Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how)."  *Id*. (emphasis in original).  A

grievance may, of course, be rejected as illegible under the grievance procedure. *See* ¶ G(1).  But, similar to the grievance in *Nelson v. Walsh*, Williams' grievances are not illegible.  As to the first grievance identified above, it can fairly be characterized as vague because Williams does not explain how he was discriminated against.  There is no fair reading of this grievance that suggests race discrimination.

However, as to SRF 2017-10-1185-28B and SRF 2017-10-1184-28B discussed above, it seems apparent that Williams alleges race discrimination and due process violations, and "defendants have not explained how it was vague." *Nelson v. Walsh*, at *4.  Like the grievance in *Nelson*, grievances SRF 2017-10-1185-28B and SRF 2017-10-1184-28B provide the date, time, place, and names of those involved, as required by ¶ R.  Defendants do not explain the more specific basis for their rejection, which required Williams to provide "corroborating information" to support his grievances or render it otherwise not vague.  As held in *Wayne v. Heyns*, rejecting a "grievance for a failure to support his claim is entirely different than rejecting his grievance for a lack of specificity."  2015 WL 736329, at *6 (E.D. Mich. Feb. 20, 2015).  In the view of the undersigned, grievances SRF 2017-10-1185-28B and SRF 2017-10-1184-28B were improperly rejected, and because he appealed the grievance through all three steps required by MDOC policy, it constitutes exhaustion of his due process and equal protection claims

against both Winn and Clark.  *See Johannes v. Washington*, 2016 WL 1253266, at

*6 (E.D. Mich. Mar. 31, 2016) (The burden is on the defendants to "show that

every reasonable jury would think the rejections were proper."); *Wayne v. Heyns*,

2015 WL 736329, at *6 (E.D. Mich. Feb. 20, 2015) ("The Court cannot discern

what more Plaintiff could have done to comply with PD 03.02.130 .... Therefore,

even though the MDOC rejected Plaintiff's Step I grievance as vague, the

undersigned finds that Plaintiff's efforts to exhaust his administrative remedies

were sufficient under the circumstances.").

There are two grievances in which Williams mentions his retaliation claims.

(Dkt. 14-3, Pg ID 166-173 (SRF 2017-11-1337-28B); Dkt. 14-3, Pg ID 157-162

(SRF 2018-01-0034-28A)).  Among other reasons, these grievances were rejected

as duplicative and those rejections were upheld at all three steps.  *Id*.  It was noted

in SRF 2018-01-0034-28A that Williams' claim regarding the JPay email system

could be brought in a separate grievance, but nothing in this record suggests that he

did so.  (Dkt. 41-3, Pg ID 159).  *See Johnson v. Correctional Medical Services,*

*Inc*., 2008 WL 88767 (W.D. Mich. 2008) (noting that it is necessary to compare

the issues stated in the two grievances to determine whether the second grievance

was properly rejected as duplicative).  In the view of the undersigned, defendants

have not met their burden of establishing that these grievances were properly

rejected as duplicative in accordance with ¶ G(1) of the grievance policy.  (Dkt.

14-2, Ex. 1, Pg ID 144).  While duplicative grievances are improper and cannot serve as the basis for exhaustion, (PD 03.02.130, ¶ G), whether the grievance is truly duplicative of another grievance is a question of fact.  *Reedy v. West*, 2017 WL 2888575, at *2 (E.D. Mich. May 22, 2017), report and recommendation adopted, 2017 WL 2880122 (E.D. Mich. July 6, 2017).  As explained in *Johannes v. Washington*, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016), the mere rejection of a grievance as duplicative by MDOC staff does not render the underlying claims unexhausted as a matter of law.  Rather, the defendants must compare the issues in the later grievances to the earlier grievance to determine whether a reasonable jury could find the rejection improper before summary judgment can be granted.  *Id*.

In this case, unlike *Reedy* and *Johannes*, defendants have provided copies of all the grievances at issue.  Yet, they merely argue that all of the grievances were rejected for procedural reasons and state in blanket fashion that the grievances do not establish the elements of his claims.  Therefore, they say, the grievances do not exhaust his claims.  (Dkt. 14, pp. 14-15).  Defendants make no effort to justify the propriety of the rejections as duplicative, which is their burden.  *Sedore v. MacLaren*, 2018 WL 4354011, at *3 (W.D. Mich. May 31, 2018), report and recommendation adopted, 2018 WL 4334625 (W.D. Mich. Sept. 11, 2018) (The defendant never addressed in his brief whether the grievance was properly rejected

and thus, he failed to meet his summary judgment burden under *Johannes*.).

Moreover, it is not clearly settled that a prisoner is precluded from separately

exhausting different legal claims arising from the same set of facts.  *Greene v.*

*Miller*, 2016 WL 6662558, at *4 (W.D. Mich. Oct. 24, 2016), report and

recommendation adopted, 2016 WL 6650148 (W.D. Mich. Nov. 10, 2016) (Court

found issue of fact where prisoner's attempt to exhaust equal protection claim was

rejected as duplicative when his earlier grievances only alleged a due process

violation.).  Indeed, the *Greene* court rejected the defendants' argument that a

prisoner "cannot keep filing multiple grievances over the same set of facts, merely

changing the legal theory or claim," as an improper attempt to apply the concept of

claim preclusion to the filing of grievances.  *Id*. at *5.  For these reasons, the

undersigned concludes that defendants have not met their burden of showing that

Williams failed to exhaust his First Amendment retaliation claim.

### C.    Equal Protection

Defendants appear to be arguing that Williams' Equal Protection claim fails

because he does not sufficiently allege the personal involvement of each defendant

and because he does not identify all the elements of an Equal Protection claim in

his complaint.  (Dkt. 14, pp. 5-6).  Defendants take no care in analyzing the

complaint to support these arguments.  Instead, defendants set out some of the

applicable law and summarily conclude that the complaint fails to meet such

standards.  Defendants have not met their minimal burden of establishing that

Williams' complaint fails to state an Equal Protection claim.  The inadequacy of

defendants' argument is similar to that in *Roden v. Floyd*, 2018 WL 3259806, at

*12 (E.D. Mich. Jan. 31, 2018), report and recommendation adopted, 2018 WL

1324738 (E.D. Mich. Mar. 15, 2018), where the court rejected the defendants'

mere recitation of the law and wholesale failure to apply the facts of the case to

that law beyond a perfunctory, conclusory statement.  Here defendants merely

indicate that a plaintiff must make a clear showing of personal involvement of each

defendant in the complaint.  Yet, defendants decline to identify how the complaint

is unsatisfactory in doing so.  Further, defendants' conclusory assertion that the

complaint does not contain any direct or circumstantial evidence that defendants

discriminated against him on the basis of race is equally devoid of analysis or

support.  However, it is well established that "issues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed

waived.  As this Court has explained innumerable times, "it is not sufficient for a

party to mention a possible argument in the most skeletal way, leaving the court to

... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.

1997) (citations omitted); *see also White Oak Prop. Dev., LLC v. Washington

Twp.*, 606 F.3d 842, 850 (6th Cir. 2010) ("perfunctory" and "nebulous" argument

renders an issue forfeited).

Moreover, it is worth noting that the complaint, in fact, contains several specific allegations regarding the personal involvement of both defendants as well as the factual basis for Williams' race discrimination claim:

- According to the complaint, Clark permanently denied Williams the opportunity to participate in the program, concluding that Williams failed to meet the criteria for the program because he was serving a sentence for domestic violence. (Dkt. 1, ¶ 2).

- On September 8, 2017, Williams lodged a formal complaint or request for corrective action with Winn against Clark for the denial, alleging discrimination. (Dkt. 1, ¶ 4).

- On September 19, 2017, Winn gave Williams a written response, which provided that "you do not have a right to participate in any of the dog programs. It is a privilege. You are not owed an explanation as to why you are not a dog handler and do not expect one. Thank you for your interest." (Dkt. 1, ¶ 7).

- Williams alleges that Winn's response is "tantamount to directly participating in permanently denying plaintiff the ability of having 900 dog program applied to him, in the same fashion as it is to those who are similarly situation." (Dkt. 1, ¶ 8).

- Williams alleges that Clark participated in the decision to deny his application and Winn was the ultimate decision-maker, who approved the denial. (Dkt. 1, ¶¶ 9-10).

- Williams alleges that defendants apply a different standard to Caucasian applicants versus African-American applicants. (Dkt. 1, ¶ 11).

- He alleges that of the 23 participants in the program, 16 are Caucasian, two are Hispanic, four are African-American, and one is Indian. (Dkt. 1, ¶ 12). Williams also alleges that Donald Hall, a Caucasian prisoner, was approved for the dog program, despite having prior gang activity, which should have precluded him, based on the program criteria. (Dkt. 1, ¶ 13).

- Williams alleges that prisoner Peterson, who is also Caucasian, was approved for the program despite being convicted of murdering his girlfriend.  (Dkt. 1, ¶ 14).

- Williams also identifies two other Caucasian prisoners, LeFleur and Adamowicz, who were approved to participate in the dog program, despite not meeting the program criteria.  (Dkt. 1, ¶¶ 15-16).

- According to the Complaint, defendants have a practice of showing "favor and affection" in applying the dog program criteria differently  to Caucasians.  (Dkt. 1, ¶ 17).

In order to state an Equal Protection claim, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of his membership in a protected class.  *See Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000).  Further, as previously stated and as defendants have acknowledged, the pleadings of pro se litigants are held to a less stringent standard.  *See Haines*, 404 U.S. at 520.  The foregoing allegations belie defendants' claim that Williams' complaint contains insufficient facts alleging personal involvement or to support the elements of a race-based Equal Protection claim.

    D.    Fourteenth Amendment Due Process

Defendants argue that Williams did not suffer any deprivation of any cognizable liberty interest and thus, his due process claim must fail.  They also argue that they are entitled to qualified immunity because Williams does not have a liberty interest in the prison dog program.  According to defendants, the alleged deprivations were Williams' inability to participate in the "Paws for a Cause" dog

program and the alleged blocking of messages from a "MOTORCITY" account.

Defendants argue that it is not clear from the complaint what the "MOTORCITY"

account is, and there is no allegation that communication from the account was

privileged.  Thus, defendants maintain that because Williams does not have a

cognizable liberty interest in the participation of a prison dog program or to receive

mail from an ambiguous account, he has failed to state due process claims against

defendants.

As an initial observation, based on the complaint and Williams' response to

the motion to dismiss, the email issue appears to be related to his First Amendment

retaliation claim, not his due process claim, and will be discussed in that context

below.  Nevertheless, the Court agrees with defendants that Williams has no

cognizable liberty interest in participating in the prison dog program.  It is well-

established that, in the context of due process, a prisoner has no constitutional right

to a prison job or a particular prison program.  *Tate v. Howes*, 2009 WL 1346621,

\*5 (W.D. Mich. 2009) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)

(no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955

(6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to

any job"); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not

implicated by prisoner classification and eligibility for rehabilitative programs,

even where inmate suffers "grievous loss"); *Antonelli v. Sheahan*, 81 F.3d 1422,

1431 (7th Cir. 1995) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services); *Carter v. Morgan*, 1998 WL 69810, *2 (6th Cir. 1998) (no constitutional right to educational classes); *Tribell v. Mills*, 1994 WL 236499, *1 (6th Cir. 1994) ("[N]o constitutional right to vocational or educational programs")).  Considering the foregoing cases, Williams' due process claim, based on his purported right to participate in the dog program, is without merit and defendants are entitled to dismissal of this claim.

  E. <u>First Amendment Retaliation</u>

  Defendants argue that Williams' First Amendment retaliation claims fails to state how he was engaged in any protected conduct.  Defendants point out that Williams' application for participation in a prison dog program is not protected conduct.  To the extent Williams claims that the protected conduct is his complaints directed at them, defendants maintain that Williams's complaint does not demonstrate how the conduct defendants allegedly engaged in—changing the requirements of the prison dog program—was adverse action directed at him. Defendants say that, at this point in the process, they had already denied his request to participate in the dog program.  Even if the change in the prison dog

program was attributable to Williams' complaints, defendants still contend that the complaint fails to state how this action adversely impacted him.

Retaliation based on a prisoner's exercise of constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was taken at least in part because of the exercise of the protected conduct. *Id.* It is well-established that prison officials cannot take adverse actions against inmates for the exercise of their First Amendment rights. As the Sixth Circuit has observed, "[p]risons have an interest in keeping the inmates as safe and secure as possible while imprisoned, and truthful speech that describes possible abuses can actually be quite consistent with that objective." *Griffin v. Berghuis*, 563 Fed. Appx. 411, 416 (6th Cir. 2014) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009)). As the Sixth Circuit has explained, "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted); *see also Cox v. Jackson*, 579 F.Supp.2d 831, 848 (E.D. Mich. 2008).

Defendants' motion to dismiss does not clearly challenge the element of protected conduct.  Williams maintains that his September 8, 2017 letter to Winn is the protected conduct.  Thus, for purposes of this report and recommendation, the undersigned will assume that the September 8, 2017 letter is protected conduct. Williams also identifies the following adverse actions:  Winn permanently denied him the opportunity to participate in the dog program; the dog program criteria was changed; and his JPay email from the MOTORCITY account was blocked.

The sequence of events reveals that the purported adverse action of the permanent denial occurred before the protected conduct.  The permanent denial of Williams' application to the dog program occurred on August 26, 2017, when Rievert told Williams that Clark had permanently denied his application.  (Dkt. 1, Pg ID 18).  Thus, the communication to Winn on September 8, 2017 cannot be the motivating factor for this action.  *See e.g.*, *Smith v. Heyns*, 2013 WL 1163172, at *12 (E.D. Mich. Jan. 10, 2013), report and recommendation adopted, 2013 WL 1155568 (E.D. Mich. Mar. 20, 2013) (The alleged adverse action -- the transfer and the denial of parole -- occurred before the prisoner lodged complaints about the adequate of his treatment, thus, the sequence of events did not support a claim that the defendants were motivated by the plaintiff's protected activity.); *Alliance for Children, Inc. v. City of Detroit Public Schools*, 475 F.Supp.2d 655, 668 (E.D. Mich. 2007) (The defendant's conduct could not have been motivated by the

plaintiff's protest because the defendant had "staked out its position before the alleged protective activity occurred.").

Williams does not explain how changing the criteria for the dog program adversely affected him. Not only was his application permanently denied before the criteria changed, but it is not clear how the changed criteria, as opposed to the initial criteria, made him ineligible for the program. Moreover, Williams does not make a claim that the new criteria was actually applied to him, given that the new criteria became effective after his application was permanently denied.

As to the blocked message on his JPay email account, Williams does not allege that either defendant was involved in blocking the message. (Dkt. 1, ¶ 34). More importantly, Williams does not cite any law suggesting that it is clearly established that blocking his email access is an adverse action sufficient to support a First Amendment retaliation claim. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable

official in his or her position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").  Williams must show that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The undersigned was unable to unearth any case law suggesting that blocking a prisoner's access from receiving email from a particular account is an adverse action for purposes of a retaliation claim and Williams has provided none.

Based on the foregoing, the undersigned concludes that defendants are entitled to dismissal of Williams' retaliation claim in its entirety because he does not sufficiently allege any adverse action.

F.    Eleventh Amendment Immunity

Defendants are correct that they are entitled to Eleventh Amendment immunity on Williams' claims for money damages against them in their official capacities.  Williams has asserted § 1983 claims against defendants, who are MDOC employees, in their official capacities.  However, the Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.

*See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The

State of Michigan has neither waived its sovereign immunity nor consented to civil

rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir.

2004). Nor does the language of § 1983 permit suits against a State or its agencies.

*See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (neither a State

nor its officials acting in their official capacities are "persons" under § 1983).

Thus, to the extent that Williams asserts claims for money damages against

defendants in their official capacities, those claims should be dismissed.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

defendants' motion for summary judgment as to plaintiff's failure to exhaust

administrative remedies be **DENIED**, defendants' motion to dismiss plaintiff's

Equal Protection claim be **DENIED**, and that defendants' motion to dismiss

plaintiff's Due Process and First Amendment retaliation claims be **GRANTED**.

The parties to this action may object to and seek review of this Report and

Recommendation but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 27, 2019               s/Stephanie Dawkins Davis
                                     Stephanie Dawkins Davis
                                     United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>February 27, 2019</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I have mailed by United States Postal Service to the following non-ECF participant: <u>Robert B. Williams, #192994, Oaks Correctional Facility, 1500 Caberfae Highway, Manistee, MI 49660.</u>

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov