UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT B. WILLIAMS,

      *Plaintiff*,

v.

THOMAS O. WINN and
TIA CLARK,

      *Defendants*.

_____/

CASE NO. 18-cv-11060
DISTRICT JUDGE MATTHEW F. LEITMAN
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION on CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 49, 50) and PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DISOBEDIENT PARTY (ECF No. 78)**

**I.     Introduction**

      This case has a lengthy procedural history that need not be reiterated here. Presently before the court is Defendants' motion for summary judgment. (ECF No. 49) and Plaintiff's motion for summary judgment. (ECF No. 50.) The Court has reviewed all the responses, replies, and supporting evidence filed with respect to these motions. (ECF Nos. 49, 50, 58, 62, 64, 69, 70, and 73.) In addition, Plaintiff filed a motion for default judgment against disobedient party for failure to comply with a court order. (ECF No. 78.) No response has been filed to that motion.

For the reasons that follow, I **RECOMMEND** that**:**

(1) **Defendants' motion for summary judgment (ECF No. 49) be DENIED IN PART as to Plaintiff's equal protection claim only and GRANTED as to all other claims**,

(2) **Plaintiff's motion for summary judgment (ECF No. 50) be DENIED**, and

(3) **Plaintiff's motion for default judgment be DENIED. (ECF No. 78.)**

II. <u>Report</u>

    A.    **Law and Analysis**

        1.    **Summary Judgment Standards**

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his or her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587–88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead,

the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479–80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### 2.    Analysis

The remaining claim is an equal protection claim based on Plaintiff's allegation that "defendants apply a different standard to Caucasian applicants versus African-American applicants" as to eligibility for the dog program, i.e., the "Paws for a Cause" program. (ECF No. 18, PageID.247–48, 276.)

#### a)    Defendants' Motion for Summary Judgment (Doc. 49)

Defendants argue that they are entitled to summary judgment because: (1) Plaintiff has not alleged any personal involvement as to Defendant Winn; (2) Plaintiff has no direct evidence of discrimination and cannot meet the prima facie case standards under *McDonnell Douglas*; (3) they are entitled to qualified immunity for actions taken in their personal capacities; and (4) both Defendants are entitled to Eleventh Amendment immunity for actions done in their official capacities. (ECF No. 49, PageID.564.)

##### i.    No personal involvement – Defendant Winn

This claim was raised and rejected in the previous R&R and need not be further addressed here. (ECF No. 18, PageID.268–69.)

##### ii.    Equal protection – Prima facie case

The equal protection claim against the two remaining Defendants requires a showing that Defendants made a distinction which "burden[ed] a fundamental right, target[ed] a suspect class, or intentionally treat[ed] one differently from others similarly situated without any rational basis for the difference." *Radvansky v. Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). To establish a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 431 U.S. 792 (1973), Plaintiff must show: "(1) he was

a member of a protected class; (2) he was qualified for the job; (3) he was subjected to an adverse employment decision; and (4) he was 'replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.'" *Johnson v. Besteman*, 2016 WL 1696697, at *2 (W.D. Mich. Apr. 1, 2016) (citation omitted). A similarly situated person means one who has "dealt with the same [decisionmaker], ha[s] been subject to the same standards, and ha[s] engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Once this burden is satisfied, the burden of production shifts to the employer to rebut the prima facie case by asserting a legitimate, non-discriminatory reason for the action taken. *Id*. The burden then shifts back to the Plaintiff to show the proffered non-discriminatory reason was a pretext. *Id*. If the Plaintiff proffers evidence contesting the employer's asserted non-discriminatory reason, the "court must still make a judgment as to whether the evidence, interpreted favorably to the Plaintiff, could persuade a reasonable jury that the employer had discriminated against the Plaintiff." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir. 1989). The burden of persuasion rests always with the Plaintiff. *Texas Dep't of Community Affairs v. Bordine*, 450 U.S. 248, 253 (1981). "To raise a genuine issue of material fact, Plaintiff must show, by a preponderance of the evidence, either: '(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action, or (3) that they were insufficient to motivate the action.'" *Johnson*, 2016 WL at *2 (citation omitted).

Plaintiff, an African-American, alleges in his complaint that applicants were not treated by the same standards resulting in, out of the 23 participants in the program, 16 were Caucasian, 4 were African-American, 2 were Hispanic, and 1 was Native American. (ECF No. 1, PageID.7.) Defendant counters that during the same period of time, out of the 29 inmates that were rejected as ineligible, 17 were Caucasian and 12 were African-American. (ECF No. 49, PageID.571, 632–97.)

Plaintiff contends that four inmates who are white, Hall #120513, Peterson #756668, LeFleur #257644, and Adamowicz #968648, were similarly situated yet they were admitted into the dog program. (ECF No. 1, PageID.8; ECF No. 50, PageID.706–16.)

The relevant dog program, PAWS with a Cause, in Block 9, requires that any inmate desiring to be a "dog handler" meet the following criteria:

(1) 12 months free of Class I or II tickets, six (6) months free of Class III tickets
(2) Cannot be classified STG I or have any gang activity history
(3) No Sexual Misconduct tickets in last five (5) years
(4) No staff or prisoner assaults in last 10 years
(5) No Substance Abuse tickets in last two (2) years
(6) Must not be serving for CSC, Animal Cruelty, Torture, Domestic Violence, Stalking, or Kidnapping
(7) Classified to, and housed in, Level II, with an ERD of five (5) years or more
(8) Must have the recommendation and support of staff and pass an oral interview with staff

(ECF No. 1, PageID.53; SRF Dog Programs.) The policy also tells inmates: "If you have am interest in becoming a Dog handler and feel as though you would meet the qualifications, let the staff in your block know." (*Id.*)

The policy expressly anticipates that the first seven criteria will be applied objectively and then the eighth criteria will be a subjective one, requiring the "recommendation and support of staff" after an interview. The ultimate decision under the eighth criteria may be one of the "discretionary decisions in prison…[for which] it is improbable that prisoners would be similarly situated to one another, for equal protection purposes, under any circumstances[,]" *Rivera v. Chester County*, 2017 WL 1150622, at *29 (E.D. Pa. Mar. 28, 2017) (collecting cases). However, Plaintiff does not rely on that criterion; instead, he relies on and has alleged unequal treatment of the seven eligibility criteria that should be applied without regard to discretion and which should be applied equally to all applicants. Thus, applicability of the first seven criteria, at issue here, is not a discretionary task and therefore may be subject to scrutiny as to whether others who were similarly situated were treated differently.

Defendants proffer the affidavit of Defendant Clark, Activities Coordinator at the Saginaw Correctional Facility (SRF). Her duties included reviewing and approving or denying applications from inmates seeking to participate in various programs, including the dog program. (ECF No. 49, PageID.593–94.) She stated that Plaintiff was not eligible and would never be eligible to participate in the dog program because "he had a severe history of domestic violence" and that Plaintiff's "conviction was not for 'domestic violence,' a review of the presentence investigation report showed that his second degree murder conviction was for beating his girlfriend to death with a hammer" that "went on for up to an hour." (ECF No. 49, PageID.594.) Defendant Clark indicated that "[i]nmates with

7

histories of domestic violence are not allowed to be dog handlers in the Unit 900 dog program because of the enhanced risk of harm to the dogs." (ECF No. 49, PageID.595.)

Defendants attempt to distinguish the inmates that Plaintiff identified as similarly situated based on general principles. Defendants argue that the "needs of the program and facility were different between September 2016 and June 2017" because when the "program was started in September 2016, the facility had difficulty getting qualified individuals to apply", but that as time went on, "interest grew" in the program. (ECF No. 49, PageID.584–85.) Defendants further contend that "[b]ecause the decisions were made almost a year apart, [Plaintiff] Williams was not similarly situated to Hall, Peterson and LeFleur." (ECF No. 49, PageID.585.) As to the timing issue, even if the needs of the program were different in 2016 from 2017, the objective seven criteria still applied and failure to meet them would render an inmate ineligible in 2016 as in 2017. Therefore, I suggest that timing is not a legitimate distinction that would render any of the proposed similarly situated individuals dissimilar. Defendants also appear to posit another generalized reason why Plaintiff's proposed similarly situated individuals cannot be considered similar: "Gang activity, kidnapping, and being 6 months misconduct free are not close to the same conduct as beating a woman to death." (ECF No. 49, PageID.583.) However, this type of subjective loosening of the seven objective criteria based on Defendant Clark's view of who deserves the most mercy is not permitted under the program's own parameters. Any attempt to circumvent the objective seven criteria before those criteria are met would be an ultra vires action. Once the prisoner meets the first seven criteria, then Defendant Clark or anyone administering the program could then and only

8

then use their subjective view of which prisoner more truly deserves to participate based on recommendations and oral interviews. (ECF No. 1, PageID.53.) Therefore, I find the Defendants' generalized arguments to be lacking as to why Plaintiff's proposed similarly situated individuals cannot possibly be considered similar.

As to Defendants specific arguments regarding each proposed similarly situated individual, I will take each of them in turn. I note that Defendants do not raise any specific arguments as to Hall.

As to Peterson #756668, Defendant Clark's affidavit acknowledges that Peterson "did not meet the criteria for the dog program because he was convicted of murdering his girlfriend" but that "[m]itigating factors included in the presentence report included that Peterson was under the influence of numerous intoxicants at the time of the murder and that Peterson took responsibility for his crimes by pleading guilty and cooperating" and "[f]urther, Peterson was not approved to handle the dogs, he was approved for the sole purpose of working as a clerk." (ECF No. 49, PageID.595–96.) I note that Plaintiff's Presentence Investigation Report indicates that he "became fairly heavily involved in the use of drugs, and his behavior was basically out of control for an extended period" and that Plaintiff "admitted he had been using drugs heavily" and "was using a variety of drugs at the time of this offense." (ECF 49, PageID.609.) In addition, Plaintiff's convictions were via guilty plea. (ECF No. 49, PageID.607.) Therefore, it appears that Plaintiff has pointed to a person, Peterson, who could be considered similarly situated.

As to Adamowicz #968648, Plaintiff contends that Defendants "have not disputed prisoner Adamowicz #968648, did not meet the criteria, as he was not six-month class III

9

misconduct free[.]" and this appears to be so. (ECF No. 50, PageID.719.) Instead, Defendant Clark proffers only that she "screened and approved Inmate Adamowicz to begin working in the dog program on August 21, 2017" and that "[a]s shown by his work assignment evaluation, Adamowicz was a good worker…" (ECF No. 49, PageID.597.) Of course, his work record after he was allowed into the program sheds no light on why he was allowed in the program despite appearing to be ineligible. Defendants concede that Adamowicz was approved in August 2017 so the decision as to his qualifications occurred close in time to the Plaintiff's application made in June 2017. (ECF No. 49, PageID.570; ECF No. 50, PageID.721.) Accordingly, I suggest that Adamowicz is potentially a similarly situated person.

As to LeFleur #257644, Defendants have not made any individualized arguments as to why he should be precluded from being similarly situated but I nonetheless mention him specifically because a reference to the current sentences he is serving reveals that he may be a possible similarly situated person. Although the dog program's objective criteria do not permit inmates serving sentences for stalking or kidnapping to participate, LeFleur is currently serving a sentence for two counts of aggravated stalking and one count of kidnapping.  https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber+257644. Accordingly, I find that Plaintiff has pointed to another potentially similarly situated person, LeFleur.

Defendants' sole argument for summary judgment on the equal protection claim was that Plaintiff could not meet his prima facie case requirements because he could not point to any potential similarly situated individuals for the jury to consider. For the reasons

10

noted above, I find that Plaintiff presents sufficient evidence to reveal a genuine issue of material fact as to the existence of similarly situated individuals. I therefore recommend Defendants' motion for summary judgment be denied as to the equal protection claim.

### iii.     Equal protection – Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. (ECF No. 49, PageID.25, 27–29.) "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations omitted). As such, once the defense is raised, Plaintiff bears the burden of demonstrating that the Defendant official (1) violated a statutory or constitutional right, and (2) "the right was clearly established at the time of the challenged conduct." *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The facts are to be "viewed in the light most favorable to the plaintiff[.]" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005). As indicated above, I find Defendants are not entitled to summary judgment on Plaintiff's equal protection claim. I further conclude that the right to equal protection is so clearly established that, if violated, the Defendants would not be entitled to qualified immunity. *Radvansky,* 395 F.3d at 312.

### iv.     Official capacity claims

Although the previous R&R recommended official capacity claims for money damages should be dismissed in the text (ECF No. 18, PageID.275–76), it appears that the recommendation did not include that language. To the extent these claims remain, they

11

should be dismissed. A lawsuit "against a government officer 'in his official capacity' is the same as a suit against the entity of which the officer is an agent." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785, n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, suing employees of state agencies or their political subdivisions in an official capacity is the same as suing the State of Michigan. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Here, Congress has not abrogated Eleventh Amendment immunity by statute or expressly in § 1983, *see Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993), and Michigan has not consented to suit, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004).

It is true that where a Plaintiff challenges the constitutionality of a state official's action, the Eleventh Amendment does not prohibit prospective injunctive relief. *Pennhurst*, 465 U.S. at 102–03. Here, however, Plaintiff requests only pecuniary relief. Thus, I suggest that any claims against a Defendant in his or her official capacity is barred by Eleventh Amendment immunity and should be dismissed.

    **b)**    **Plaintiff's Motion for Summary Judgment (ECF No. 50)**

Plaintiff faces a "substantially higher hurdle" to achieve summary judgment because the burden of proof would be his at trial. *Arnett v. Myers*, 281 F.3d 552, 561–62 (6th Cir. 2001). He must present evidence that, when viewed in the light most favorable to the

Defendants, *no* reasonable juror could find in the Defendants' favor. *Id.*; *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). "Summary judgment in favor of the party with the burden of persuasion, however, is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). In the instant case, Plaintiff's motion and Defendants' response mimic the arguments made in their briefs regarding Defendants' motion for summary judgment. (ECF No. 50, 58.) As to the Defendants' motion, I found a genuine issue of material fact exists as to Plaintiff's equal protection claim but I did not find that Plaintiff had presented a case where no reasonable juror could find in Defendants' favor. Therefore, I recommend that this motion be denied.

### c) **Plaintiff's Motion for Default Judgment (ECF No. 78)**

In this motion, Plaintiff alleges that Defendants have flouted the Order to produce documents relating to Mr. Douglas Burgess's application to the dog program. (ECF No. 78, PageID.1044.) Defendants respond that the documents in question could not be located by the date required in the Order, but that as soon as the documents were located, they were provided to Plaintiff. (ECF No. 79, PageID.1059.) Defendants indicate that the documents were mailed to Plaintiff on June 17, 2020 (*Id.*) The Order in question gave Defendants until May 28, 2020 to provide the documents. (ECF No. 75, PageID.1036–37.) Thus, it appears the production was untimely by only a couple of weeks and there does not appear to be any bad faith on their part. Even if bad faith could be shown, a default judgment would be far too harsh a penalty to exact upon a mere three-week delay absent any prior failures to

13

cooperate in discovery. *Peltz v. Moretti*, 292 F. App'x 475, 479 (6th Cir. 2008). Accordingly, I recommend that this motion be denied.

### 3. Conclusion

In light of the above analysis, **IT IS RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 49) be denied in part as to Plaintiff's equal protection claim only and granted as to all other claims, that Plaintiff's motion for summary judgment (ECF No. 50) be denied, and that Plaintiff's motion for default judgment be denied. (ECF No. 78.)

## III. Review

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No.

14

1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 30, 2020                              S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Robert B. Williams #192994 at Kinross Correctional Facility, 4533 W. Industrial Park Drive, Kincheloe, MI 49786.

Date: July 30, 2020                               By s/Kristen Castaneda
                                                  Case Manager